# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KAUPTHING EHF., <br><br> Plaintiff, <br><br> v. <br><br> BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND LIQUIDATION PORTFOLIO, *et al.*, <br><br> Defendants. | Civil Action No. 17-761 (JEB) |

## **MEMORANDUM OPINION**

Plaintiff Kaupthing ehf., an Icelandic bank, sold billions of dollars in notes to investors throughout the world. One such investor was Defendant Bricklayers and Trowel Trades International Pension Fund, which owned a series of these notes until Kaupthing bought them back under a repurchase provision. When Kaupthing thereafter went bankrupt, it filed a suit in Iceland to rescind the buy-back and recover the monies expended. The Fund, a resident of the District of Columbia, never appeared overseas to defend itself, and a default judgment resulted. That judgment, however, did not name the Fund as a liable party; instead, the Icelandic court ordered another party – an account owned by the Fund – to pay Kaupthing $422,296.

Plaintiff has come to this Court to enforce the Icelandic Judgment, suing the Account, the Fund, and the Fund's Board of Trustees. Defendants now move to dismiss, arguing that the Account lacks the capacity to be sued, the Icelandic Judgment does not name the Fund or the Trustees as liable parties, and Defendants, in any event, were not subject to personal jurisdiction in Iceland. Agreeing with all of these contentions, the Court will grant the Motion.

1

**I.     Background**

The Court treats the facts set forth in the Complaint as true, as it must at this stage, but also draws much of the background from the Icelandic Judgment itself. Plaintiff is an Icelandic corporation. See Am. Compl., ¶ 4. In 2007, it initiated a multi-billion-dollar program in which it sold certain securities – namely, the notes at issue in this case – to investors all over the world. See ECF No. 11, Exh. C (Icelandic Judgment) at 2-3. Although the notes at issue originated with Plaintiff, investors purchased them through a program run by an American clearing house. Id. at 3-4. These notes and their indentures were also to be construed and governed "entirely in accordance with the law of the State of New York." Id. at 5. Purchase of a note entitled its owner to receive semiannual payments from Plaintiff and to eventually cash out at specified maturity dates. Id. at 3. Plaintiff, however, was empowered by a repurchase provision in the note program's prospectus to buy back outstanding notes and reduce its liability under the program by extinguishing them. Id. at 5.

In 2008, Plaintiff exercised this power under the repurchase provision and bought back notes owned by Bricklayers and Trowel Trades International Pension Fund – a District of Columba resident. Id. at 6; Am. Compl., ¶ 6. The Fund, before the buy-back, held the notes in an account called the Bricklayers and Trowel Trades International Pension Fund Liquidation Portfolio (Account). See Icelandic Judgment at 7. Management of the Account was entrusted to the Western Asset Management Company – the Fund's agent – but the Fund maintained ultimate control over the Account and the notes contained therein. Id. Emails exchanged between Plaintiff and WAMC culminated in a "single transaction" whereby Plaintiff transferred payment to the Account, and, in return, its outstanding liabilities under the note program were reduced by the value of the interest purchased. Id. at 6.

Kaupthing went bankrupt shortly thereafter. Id. Its bankruptcy entitled it, under Icelandic law, to rescind its buy-back of the Fund's notes and to recover the sum paid. Id. at 8. Plaintiff filed a lawsuit in Iceland in June 2012 to pursue that end. Id. at 7-8; Am. Comp., ¶ 10. The complaint named WAMC as "primary defendant," the Account as "alternative defendant," and the Fund as "defendant of last resort." See Am. Compl., ¶ 10. Only WAMC, however, appeared in Icelandic court to defend itself. Id., ¶ 12.

That court ultimately declined to impose liability on WMAC because it "was involved in the transaction only as an intermediary." Icelandic Judgment at 13, 16; Am. Compl., ¶ 14. Next setting its sights on the Account, the Court held that it was "a legal person capable of having legal rights" and was thus able to "be the defendant in a lawsuit." Icelandic Judgment at 15. The court also identified the Account as the party that had been "the beneficial owner" of the "note interest" bought back by Plaintiff. Id. The court, accordingly, entered a default judgment ordering the Account to pay Plaintiff $422,296.03 plus interest. Id. at 16; Am. Compl., ¶ 14. The Fund, conversely, was not mentioned in the court's order. See Icelandic Judgment at 16 (omitting Fund, as defendant of last resort, from "ADJUDICATION" section).

Plaintiff then filed this diversity action to enforce the Icelandic Judgment under the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act. See Am. Compl., ¶ 3; Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1212 (9th Cir. 2006) (*en banc*) ("In diversity cases, enforceability of judgments of courts of other countries is generally governed by the law of the state in which enforcement is sought.") (citation omitted). The Amended Complaint names the Account, the Fund, and the individual members of the Fund's Board of Trustees as Defendants. Id., ¶ 7. All Defendants now move to dismiss.

3

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss any count of a complaint that fails "to state a claim upon which relief can be granted." In evaluating the motion, a court must likewise "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted). The court need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

This pleading standard is "not meant to impose a great burden upon a plaintiff." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005). While "detailed factual allegations" are not necessary to withstand a dismissal motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), the Complaint still "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In other words, a plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint may survive even if "'recovery is very remote and unlikely'" or the veracity of the claims are "doubtful in fact" if the factual matter alleged in the complaint is "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

In evaluating the sufficiency of a complaint under Rule 12(b)(6), a court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the

complaint[,] and matters of which [the court] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). The court may thus consider those materials on a motion to dismiss without treating the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see also Marshall v. Honeywell Tech. Solutions, Inc., 536 F. Supp. 2d 59, 65-66 (D.D.C. 2008).

**III.    Analysis**

In seeking dismissal here, Defendants produce a congeries of arguments. The Court will first address the threshold question of the Account's capacity to be sued. It will then separately turn to the enforcement and jurisdictional requirements of the D.C. Uniform Foreign-Country Money Judgments Recognition Act. As its analysis of these issues resolves the Motion, the Court does not reach Defendants' contention regarding service of process in this suit.

A.  Capacity of Account

Defendants' opening position is that the Account has no legal capacity here. In countering this challenge, Plaintiff first maintains that a party may not raise such an issue on a motion to dismiss. See Opp. at 11-12. While the relevant rule is silent on the issue, see Fed. R. Civ. P. 9(a)(2), there is ample case law contrary to Kaupthing's position. See, e.g., Smartdoor Holdings, Inc. v. Edmit Industries, Inc., 78 F. Supp. 3d 275, 277 (D.D.C. 2015) (granting motion to dismiss for lack of capacity to be sued); Pushkin v. Nat'l Academies Bd. on Sci. Educ., 2012 WL 4889277, at *3 (D.D.C. Aug. 26, 2012) (granting motion to dismiss for lack of capacity to be sued where defect appeared on face of complaint); Bellow v. Charbonnet, 1999 WL 203740, at *1 (E.D. La. Apr. 7, 1999) (granting motion to dismiss "an account" for lack of capacity to be sued because it was used solely for the "receipt and disbursement of funds" and was "controlled" by other parties). The Court, accordingly, holds that the capacity to be sued may be raised on a

5

motion to dismiss where, as here, the defect appears on the face of the complaint or in materials attached thereto – *e.g.*, the Icelandic Judgment.

In cases such as this, where the party in question is neither an individual nor a corporation, capacity to be sued is determined with limited exceptions by "the law of the state where the court is located." Fed. R. Civ. P 17(b). While cases like Bellow are thus helpful authority, the District of Columbia Code and common law must govern the issue.

Plaintiff does not allege that the Account is an individual, a corporation, or any other sort of entity capable of being sued. See Am. Compl., ¶ 5. Rather, it alleges only that the Account is a "[p]ortfolio . . . created to hold assets under the control and for the benefit of [the] Fund." Id. Defendants thus cast a wide net in their pursuit to analogize the Account to other entities that courts in this district have held lack the capacity to be sued, drawing comparisons to unincorporated associations, Millennium Square Residential Ass'n v. 2200 M Street LLC, 952 F. Supp 2d 234, 243 (D.D.C. 2013), partnerships, Pritchett v. Stillwell, 604 A.2d 886, 889 (D.C. 1992), divisions of corporations, Smartdoor, 78 F. Supp. 3d at 277, and a school that is part of a larger parish. St. Francis, 77 F. Supp. 2d at 78-79. While the rationale supporting lack of capacity of the first two is inapplicable here, the Court finds that the justification underlying the latter two entities' lack of capacity is fully applicable to the Account.

There is no dispute that under D.C. law, "unincorporated divisions of a corporation lack [the] legal capacity to be sued." Id. at 75-76 (collecting cases). This principle is supported by a "pragmatic" rationale derived from the fact that a division owns no independent assets and is under the control of a larger organization. Id. at 76. As such, "there can be no levy of execution against the division's assets" unless the controlling organization itself is liable. Id. (quotation omitted). Inversely, "if the [controlling] organization is not liable[, then] none of its assets can

6

be used to satisfy the judgment." Id. (internal quotation marks omitted). In St. Francis, for example, the Archdiocese's exertion of control over the parochial school's finances, even without directly overseeing the daily expenditures from an independent bank account, extinguished the school's capacity to be sued. Id. at 78-79.

This rationale applies with full force to the Account, which "was created to hold assets under the control and for the benefit of [the] Fund." Am. Comp., ¶ 5. The Fund not only benefited from the assets, but it also "owned" them, and it asserted its control by moving the assets around in 2008, as well as by delegating authority to WAMC through various "investment management agreement[s]." Icelandic Judgment at 7. As in St. Francis, the Fund's exertion of control over the Account limited the latter's financial independence. Indeed, the degree of control here went far beyond that exercised by the Archdiocese – the Account was under complete control and had no assets of its own. As a result, a judgment obtained against the Account, like one against a corporate division, could not be satisfied without securing an additional judgment imposing liability on the Account's owner.

The application of this principle does not leave an injured party with nowhere to turn, as the Account's lack of capacity has no bearing on the liability of its owner. Rather, holding that a bank account lacks the capacity to be sued directs injured parties towards judgments that, if won, could actually be satisfied. The Court, accordingly, finds that a bank account under the circumstances here lacks the capacity to be sued and that the Account must be dismissed from the action.

B. Enforcement Against Fund and Trustees

The Motion next argues that Plaintiff cannot enforce the judgment against the remaining Defendants – *viz.*, the Fund and the Trustees – because they are not parties to such judgment. To

7

understand this argument, the Court begins with the requirements of the D.C. Uniform Foreign-Country Money Judgments Recognition Act, D.C. Code § 15-361, *et seq*. The D.C. UFMJRA is an enactment of the Foreign-Country Money Judgments Recognition Act promulgated by the Uniform Law Commission. See Unif. Foreign-Country Money Judgments Recognition Act, §§ 1-13 (Unif. Law Comm'n 2005). The most recent version of the Act has been adopted in half of the states for the "purpose of establishing uniform and clear standards under which . . . courts will enforce the foreign-country money judgments that come within [the Act's] scope." Id., Refs & Annos (West).

While the Uniform Act is widely adopted, there is little caselaw construing D.C.'s version. See, e.g., Commissions Imp. Exp., S.A. v. Republic of Congo, 118 F. Supp. 3d 220, 226 (D.D.C. 2015) ("Case law is sparse in D.C. federal and local courts regarding [the relevant] portions of the statute."), appeal dismissed, D.C. Cir. 15-7090 (May 18, 2016). As a result, our courts have turned to persuasive authority from other jurisdictions to construe the Act. Id. at 226 (relying on authority from New York Court of Appeals and Ninth Circuit to construe Act). This reliance on outside authority is built into the D.C. UFMJRA itself, which tells courts that "[i]n applying and construing [the Act], consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." D.C. Code § 15-370.

With this background in mind, the Court turns to one of the Act's requirements – namely, that a foreign judgment may be enforced in D.C. only "between the parties" to the original judgment. The Act places on the party seeking enforcement the burden of showing that the judgment is final, conclusive, and enforceable. See D.C. Code § 15-363. If these requirements are met, the foreign judgment is "[c]onclusive between the parties to the same extent as the

8

judgment of a sister state entitled to full faith and credit in the District of Columbia would be conclusive." Id. § 15-367. Defendants argue that the Icelandic Judgment is not conclusive "between" Plaintiff and the Fund – and therefore cannot be enforced against the Fund – because the Icelandic Court ordered only the Account to pay Plaintiff. (The Trustees, in fact, were not even parties to the Icelandic suit in the first place.)

In support of this position, Defendants point to a case interpreting the same "between the parties" language in an older version of the UFMJRA. See Mot. at 9 (citing Novae Corp. Underwriting Ltd. v. Atl. Mut. Ins. Co., 556 F. Supp. 2d 489 (E.D. Pa. 2008)). In Novae, the plaintiffs sought to enforce a money judgment from the United Kingdom that ordered a subsidiary company to pay the plaintiff damages. See 556 F. Supp. 2d at 493. The subsidiary company had been incorporated in the U.K. and was named in the original lawsuit, but by the time the judgment was rendered, the subsidiary had been dissolved. Id. at 492-93. The plaintiff thus sought to enforce the judgment against the subsidiary's parent company in the United States. Id.

The Novae court first construed the phrase "between the parties" to mean that the UFMJRA "applies only as between the identical parties to the judgment which transfer and enforcement is sought." Id. at 494. It then held that the U.K. judgment was unenforceable against the parent company because (1) the parent company was not named as a liable party in the U.K. judgment; (2) the U.K. court recognized that the parent and subsidiary companies were distinct entities; and (3) extending liability to the parent company would creep into the "underlying merits" of the foreign action, impermissibly extending its scope. Id. at 494-95.

All three of these justifications are present in this case, too. First, the Icelandic Judgment imposed no liability on the Fund or the Trustees and ordered only the Account to pay Plaintiff.

9

See Icelandic Judgment at 16-17. Second, the Icelandic court viewed the Account and the Fund as distinct entities, the former of which it held was a "legal person capable of having legal rights" and of being a "defendant in a lawsuit." Id. at 15; see also SerVaas Inc. v. Republic of Iraq, 540 F. App'x 38, 40-41 (2d Cir. 2013) (foreign judgments enforceable under New York UFMJRA only against named parties or parties that <u>foreign court</u> views as "indistinguishable" or the "same" as named parties). Finally, as a result of this recognized distinction, enforcing the judgment against the Fund would delve into the underlying merits of the Icelandic Judgment and extend the scope of that court's ruling.

Plaintiff does not dispute that <u>Novae</u>, although clearly not binding precedent, should guide the Court's analysis. Instead, it argues that refusing to extend liability to the Fund would sanction the closing of an account "as a mechanism to frustrate potential creditors." Opp. at 12-13 (citing D.C.'s fraudulent-transfer laws). This argument puts the cart before the horse. Prohibitions on fraudulent transfers exist to prevent a party that has already been found liable from hiding its assets and becoming judgment proof. In such a scenario, however, the necessary prerequisite is that the evading party has a judgment against it. As discussed above, there is no judgment against the Fund. What Plaintiff asks the Court to do is to create one. Refusing to do so does not sanction fraud, but it does adhere to the limitations imposed by the D.C. UFMJRA.

As that Act may only be used to enforce a judgment "between the parties" actually named in it, the Icelandic Judgment cannot be enforced against the Fund or the Trustees. The Complaint must therefore be dismissed against these Defendants.

    C. Personal Jurisdiction

There is, moreover, another independent reason why the Court cannot enforce the Judgment: the Icelandic court's lack of personal jurisdiction over Defendants. Courts here "may

10

not recognize a foreign-country judgment if the . . . [f]oreign court did not have personal jurisdiction over the defendant." D.C. Code § 15-364(b); see Congo, 118 F. Supp. 3d at 225 (lack of personal jurisdiction is "mandatory" exception from enforcement under D.C. UFMJRA).

Plaintiff, in fact, does not argue that any of the specific grounds listed by the Act for establishing personal jurisdiction have been satisfied. See D.C. Code § 15-365(a). It asserts, however, that this list is not exhaustive and that the Court may recognize other bases of jurisdiction. See Opp. at 14 (citing D.C. Code § 15-365(b)). While this is true, the Court may do so only if the asserted jurisdiction comports with both the Constitution's Due Process Clause and D.C.'s long-arm statute. See Congo, 118 F. Supp. 3d at 227 (Under the D.C. UFMJRA, "personal jurisdiction should only be accepted as validly asserted if it comports with the internal law of the state where recognition is sought and if constitutional minimums are met."). The jurisdiction asserted here, as explained below, does not comport with these requirements.

The Due Process Clause permits courts to exercise two different kinds of personal jurisdiction, each related to a defendant's frequency and degree of contact with a forum. General jurisdiction, the first kind, permits a court to "hear any and all claims against" a defendant, even if they did not arise from its contacts with the forum. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). This jurisdiction is embodied in D.C.'s general-jurisdiction provision, D.C. Code § 13-334(a), which has been interpreted as being equivalent to the Due Process Clause in scope. See Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 510 (D.C. Cir. 2002) (citing Hughes v. A.H. Robins Co., 490 A.2d 1140, 1148 (D.C. 1985)). The Due Process Clause itself permits general jurisdiction to be exercised over only those defendants whose "affiliations with the State are so 'continuous and systematic' as to render [them] essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014)

11

(quoting Goodyear, 564 US at 919). Kaupthing, accordingly, does not contend that Defendants – none of which is at "home" in Iceland – were subject to general jurisdiction there.

Specific jurisdiction, on the other hand, permits a court to adjudicate those "issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop, 564 U.S. at 919. D.C.'s long-arm statute, D.C. Code § 13-423, enumerates the kinds of contacts with the District that are sufficient to bring a non-resident defendant into a D.C. court, one of which is applicable here: "transacting any business in the District of Columbia." § 13-423(a)(1). The transacting-business provision "has been given an 'expansive interpretation' rendering it 'coextensive with the due process clause.'" World Wide Travel Incorporated v. Travelmate US, Inc., 6 F. Supp. 3d 1, 6 (D.D.C. 2013) (quoting Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004)). This means that it "reaches out to non-resident defendants with as long an arm as the Constitution will allow." Id. at 7.

The Due Process Clause, in turn, permits a court to exercise specific jurisdiction over a non-resident defendant only if there are sufficient "minimum contacts" between the defendant and the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) The defendant's contacts must be extensive enough that it "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980). "Random," "fortuitous," or "attenuated" contacts are not enough, and although physical presence in the forum is not necessary, the defendant must have somehow "purposeful[ly] avail[ed]" itself of "the benefits and protections of the forum's laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985) (internal quotation marks omitted).

Here, Defendants originally procured their notes, which were issued in U.S. Dollars and governed by New York law, through a program run by The Depository Trust Company (a New York corporation) and an American subsidiary of Deutsche Bank. See Icelandic Judgment at 2-4. The only contact Defendants had with Iceland was that Kaupthing, an Icelandic resident, had issued the original notes and then bought them back. Selling goods to or entering a contract with a state's resident cannot alone create the minimum contacts needed to establish specific personal jurisdiction. See, e.g., World Wide Travel, 6 F. Supp. 3d at 9 (holding that non-resident defendants "would not reasonably expect to be sued" in resident plaintiff's forum merely because defendants entered into contract with resident plaintiff); COMSAT Corp. v. Finshipyards S.A.M., 900 F. Supp. 515, 524 (D.D.C. 1995) ("The mere existence of a contract between a non-resident and a resident is not a sufficient basis on which to claim jurisdiction over the non-resident."); see also Burger King, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, . . . the answer clearly is that it cannot."). Kaupthing's issuance of the notes to Defendants (via third parties in the U.S.) and its repurchase cannot by themselves meet the constitutional minimum.

Yet, beyond Kaupthing's residency, no other aspect of the sale implicated the foreign jurisdiction. There was nothing about the notes themselves that suggested a special relationship to Iceland or Icelandic law, as they were issued in U.S. Dollars, controlled and distributed by non-resident third parties, and governed by New York law. Cf. Hardy v. Northern Leasing Systems, Inc., No. 13-0362, 2013 WL 3488489, at *4 (D.D.C. July 12, 2013) ("The Lease agreement is a particularly weak justification for invoking the D.C. long-arm statute. By its terms, New York law governs, and any litigation shall be brought in the federal or state courts in

New York."). And the sale of the note interest, facilitated by a third party, took place exclusively through emails and electronic booking. See Willis v. Willis, 655 F.2d 1333, 1338 (D.C. Cir. 1981) ("Absent some indication that the agreement was signed or negotiated in the [relevant jurisdiction], the fact that one party is a resident of the forum state is an insufficient basis for asserting jurisdiction over the other."). Defendants neither availed themselves of the protection of Icelandic law, nor could they reasonably anticipate being haled into court there. They did not, as a result, have the minimum contacts required for the foreign court to exercise specific personal jurisdiction over them.

Plaintiff responds with three arguments, none of which contests that Defendants lacked minimum contacts. Kaupthing first asserts that "it is not required to plead with specificity the Icelandic Court's jurisdiction." Opp. at 13 (citing Fed. R. Civ. P. 9(e)). Courts have identified, however, that a party seeking enforcement under the Act "bears the burden of making a *prima facie* showing that the mandatory grounds for nonrecognition – *i.e.*, due process and personal jurisdiction – do not exist." Wimmer Canada, Inc. v. Abele Tractor & Equipment Co., Inc., 750 N.Y.S.2d 331, 332 (N.Y. App. Div. 2002); see Ackerman v. Levine, 788 F.2d 830, 842 n.12 (2nd Cir. 1986) ("[A] plaintiff seeking enforcement of a foreign country judgment . . . must establish *prima facie*" the foreign court's "jurisdiction over the parties."). The failure to meet this burden may be challenged on a motion to dismiss. See, e.g., Plata v. Darbun Enterprises, Inc., 2009 WL 975233, at *4-5 (S.D. Cal. April 9, 2009) (analyzing personal jurisdiction under UFMJRA on motion to dismiss); Sung Hwan Co., Ltd., v. Rite Aid Corp., 7 N.Y.3d 78, 82 (2006) (same).

The best Plaintiff can muster is that proper service "allowed the Icelandic Court to establish personal jurisdiction over the Fund." Opp. at 16. While proper "service is [a] necessary" part of bringing a defendant to court, it is by itself "not sufficient to allow a court to

14

exercise personal jurisdiction." Magowan v. Lowery, 166 F. Supp. 3d 39, 56 (D.D.C. 2016); see Mwani v. bin Laden, 417 F.3d 1, 8 (D.C. Cir. 2005) ("[S]ervice of process does not alone establish personal jurisdiction."). Proper service therefore cannot save the judgment.

Kaupthing next argues that the Icelandic court "concluded" it had jurisdiction. See Opp. at 14. This Court and others, however, have read the UFMJRA to place an obligation on enforcing courts to determine for themselves whether a foreign judgment was accompanied by the requisite personal jurisdiction. See, e.g., Congo, 118 F. Supp. 3d at 227 (independently determining whether foreign court obtained jurisdiction); Sung Hwan, 7 N.Y.3d at 82-83 (same); Bank of Montreal v. Kough, 612 F.2d 467, 470-71 (9th Cir. 1980) (same); see also Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 730 (2nd Cir. 1998) ("A court entering a default judgment may assume that it has jurisdiction over the defendant[,] . . . but that assumption does not preclude the defendant from later contesting jurisdiction in the enforcing court."). To hold otherwise would render the Act's jurisdictional requirement toothless and much of its language unnecessary – *e.g.*, the command that the "courts of the District of Columbia" analyze specified grounds for establishing jurisdiction. See D.C. Code § 15-365.

Plaintiff's final shot at enforcement is that the doctrine of comity requires this Court to ignore the Icelandic Judgment's constitutional defects. See Opp. at 13-14. This argument misunderstands the doctrine. "It is clearly established that in order to grant comity to a foreign court's award of a money judgment against a defendant, the foreign court must have obtained valid personal jurisdiction over the defendant." Cunard S.S. Co. v. Salen Reefer Servs. AB, 773 F.2d 452, 457 (2d Cir. 1985) (citations omitted); see Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech., 763 F Supp. 2d 12, 24 (D.D.C. 2011) ("[C]omity will be granted to the decision or judgment of a foreign court" only "if it is shown that the foreign court is a court of

competent jurisdiction.") (internal quotations omitted). Comity, accordingly, cannot compensate for a lack of jurisdiction.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order consistent with this Opinion will be issued on this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 1, 2017